John O. CHENAULT, Appellant,

v.

COUNTY OF SHELBY et al., Appellees.

No. 10621.

Court of Civil Appeals of Texas. Austin.

Jan. 21, 1959.

Rehearing Denied Feb. 11, 1959.

432

Long, Strong, Jackson & Strong, Carthage, for appellant.

Richard E. McDaniel, County Atty., Fred Hudson, Jr., Dist. Atty., Center, for appellees.

ARCHER, Chief Justice.

This suit was filed by appellees against appellant for rescission and cancellation of an architect's contract, entered into by the parties on February, 1956, for the preparation of studies, drawings, specifications and plans for a county hospital building and the supervision of construction work.

The appellant was paid $14,850 in four installments, the last one being paid on May 13, 1957, and an order was made ratifying the prior payment which had been paid from the hospital fund.

The appellant filed a cross action for a balance claimed due him.

The case was tried with the aid of a jury, to which three issues were submitted, and in response to which the jury found (1) that appellant was led to believe that $330,000 was available for the cost of the hospital, (2) that appellant had a reasonable time prior to the filing of this suit within which to furnish plans, approved by State and Federal agencies, to enable appellant to erect the hospital within the amount of money which appellant was led to believe to be available for such, and (3) that appellant was not on the date of the filing of suit, and had not remained since that time, ready, willing and able to furnish the Commissioner's Court within a reasonable time after July 9, 1957, a set of plans and specifications.

There is a dispute as to the amount the building was to have cost.

■ There is testimony that a $200,000 bond issue was voted and that an allocation of funds under the Hill-Burton Act in the sum of $200,000 had been made prior to the employment of appellant, who testified that he had been informed that there was $400,000 available to build and equip the hospital, to include professional fees, and that this amount was set up in his budget.

Plans as well as the program were submitted to appellees and forwarded to the State Department of Public Health and U. S. Public Health Service, and on April 18, 1957 there was an order made advertising for bids.

A readvertisement for bids was made and bids were received on July 9, 1957, and the low bid was $405,000 which was rejected, and appellant was directed to revise the plans within the budget, the amount of which was not stated in the order.

Suit was filed on September 23, 1957 for rescission and cancellation of the appellant architect's contract, and appellant filed a cross action, and, based on a jury verdict, the court entered judgment cancelling the contract and denying appellant a recovery.

Appellant filed his motion for judgment non obstante veredicto contending that appellees were not entitled under the pleadings and proof to rescission, or that appellant had taken an unreasonable time in the completion of the plans, and had substantially performed the contract, and because in accepting the plans, in making payments and by ordering a revision of the plans, waived the right to rescind. The motion was overruled and to this action appellant has assigned error.

Appellant filed his motion to be allowed to withdraw his original answer and file a plea in abatement, in due order, stating that the contract contained a provision for arbitration, which was overruled.

Appellant has 35 points assigned as error directed to the action of the court in overruling his motions for leave to file a plea in abatement, judgment for verdict, overruling special exceptions, in granting judgment of rescission, in submitting the issues to the jury, and as to other trial procedures.

We do not set out the points more in detail since we do not believe the remedy of rescission and cancellations was available to plaintiffs in this case.

■ The remedy of rescission and cancellation is an equitable one and a party cannot avoid his contract on the ground that he received less in value than he supposed, or that what he has received has no value at all unless he shows additional facts entitling him to equitable relief such as fraud or mistake.

Black on Rescission and Cancellation, Vol. 1, p. 475, Sec. 166.

■ It is also essential to have pleadings and proof of facts showing that the complaining party has no adequate remedy at law, and delay is not a type of breach of contract that permits rescission and cancellation.

Black, supra, Vol. 1, p. 550–51, Sec. 197; Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860.

Then too, the facts as pleaded by appellees, make it apparent that if the relief sought was granted that the status quo of the parties could not be restored.

Black on Rescission and Cancellation, Vol. 3, pp. 1497–98, Sec. 18; El Campo Ice, Light & Water Co. v. Texas Machinery & Supply Co., Tex.Civ.App., 147 S.W. 338, err. ref.

The pleadings of appellees do not allege facts that they will sustain serious and irreparable pecuniary injury unless the relief prayed for is granted.

Southwestern Surety Ins. Co. v. Ferguson, 62 Tex.Civ.App. 332, 131 S.W. 662; 17 C.J.S. Contracts § 422, p. 906.

The agreement between the County Commissioners Court of Shelby County, called the Owner, and John O. Chenault, called the Architect, dated February 15, 1956, reads in part as follows:

"Now, Therefore, the Owner and the Architect, for the consideration hereinafter set forth.

"The Architect agrees to perform, for the above named Work, professional services hereinafter set forth.

"The Owner agrees to pay the Architect for such services a fee of Six (6) per cent of the cost of the Work, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the Basic Rate.

"The parties hereto further agree to the following conditions:

"1. The Architect's Services. The Architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for *architectual,* structural, plumbing, heating, electrical, and other mechanical work; assistance in the drafting of forms of proposals and contracts the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work.

"2. Payments. Payments to the Architect on account of his fee shall be made as follows:

"Upon the completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working drawings monthly payments aggregating at the completion thereof a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings or if bids have been received, then computed upon the lowest bona fide bid or bids.

"From time to time during the execution of work and in proportion to the amount of service rendered by the Architect, payments shall be made until the aggregate of all payments made on account of the fee under this Article, shall be a sum equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the Work.

"No deductions shall be made from the Architect's fee on account of penalty, liquidated damages, or other sums withheld from payments to contractors.

" *     *     *     *     *     *

"4. Supervision of the Work. The Architect will endeavor by general supervision to guard the Owner against defects and deficiencies in the work of contractors, but he does not guarantee the performance of their contracts. General supervision of the Architect is to be defined as follows: That the Architect or his representatives shall be on the site of the work at all stages requiring inspection, direction or checking but shall not be taken to mean that there shall be a representative of the Architect on the site at all times that work is going on.

"5. Preliminary Estimates. When requested to do so the Architect will furnish preliminary estimates on the cost of the Work, but he does not guarantee such estimates."

The contract did not require the preparation and furnishing of plans and specifications for the construction of the hospital building at any specific cost. A set of

plans were accepted by the Commissioners Court and bids taken thereon, and because the cost was too high the architect was directed to revise the plans in an effort to come within a lower cost, such requirement was not a provision of the contract.

■ It is not material that the building was not constructed in order to determine whether or not appellant was entitled to payment for the production of the plans for a certain percentage of the estimated cost, and in addition thereto for supervision of the building, and such cost is separate and appellant is not entitled to payment for the supervision of a building not constructed.

Black on Rescission and Cancellation, Vol. 1, p. 558, Sec. 198; Spencer v. City of New York, 179 App.Div. 69, 166 N.Y.S. 177.

■ Generally equitable relief of rescission will not be granted for the mere breach of a contract.

Cheek v. Metzer, supra; Davis v. Commercial Standard Ins. Co., Tex.Civ.App., 194 S.W.2d 599, er ref., N.R.E.

In Baylor University v. Carlander, Tex. Civ.App., 316 S.W.2d 277, the court went into detail in discussing a contract between an architect and the University and cited many authorities, and we believe that the holding is correct and that such is determinative of this instant case.

No issues were requested and none submitted on the cross action and the judgment was that plaintiffs recover the sum of $14,850 with interest, and that defendant and cross plaintiffs take nothing. Appellant does not complain in this appeal as to the take nothing judgment.

The judgment of the Trial Court is reversed and rendered in favor of appellant insofar as judgment is rendered against him, and the judgment is affirmed insofar as it denies appellant any recovery on his cross action.

Reversed and rendered in part and in part affirmed.

HUGHES, J., not sitting.